## UNITED STATES v. DE TOLNA.

District Court, E. D. New York.    June 28, 1928.

No. 2776.

Aliens ⊙⊸71½(3)—False oath as to residence and mental reservation in renunciation of allegiance held ground for cancellation of certificate of naturalization.

Certificate of naturalization will be set aside as obtained by fraud, it appearing alien's statement under oath in his application as to necessary residence was false, that his witnesses could not have known of such residence, that there was a mental reservation in his renunciation of allegiance to foreign power, that he never renounced his title of "Count," that he was continuously absent from the country for 12 years after obtaining his certificate, that during that time in a marriage contract he alleged that he was an Austro-Hungarian subject, and that he did not assert his citizenship till after his yacht was seized by a foreign power.

Naturalization. Proceeding by the United States against Rudolph Festetics de Tolna to set aside certificate of naturalization. Decree for petitioner.

William A. De Groot, U. S. Atty., of Brooklyn, N. Y. (Murry Boxer, Asst. U. S. Atty., of New York City, of counsel), for the United States.

Charles H. Kriger, of Brooklyn, N. Y., for respondent.

MOSCOWITZ, District Judge. This is an action in equity to revoke, cancel, and set aside an order made on April 6, 1906, in the superior court of the city and county of San Francisco, admitting the defendant to become a citizen of the United States of America, and to revoke, cancel, and set aside the certificate of naturalization issued about said date by the clerk of said court to the respondent, upon the ground that the said order and certificate had been procured fraudulently and illegally.

The petitioner alleges that the fraud and illegality consisted in that the respondent fraudulently and feloniously represented and declared his intentions to become a citizen of the United States and to renounce his allegiance and fidelity to any foreign prince, potentate, etc., and more particularly to the Austro-Hungarian monarchy; that he did not reside within the United States at least five years preceding his alleged naturalization; that he did not reside for the continued period of five years next preceding his alleged admission as a citizen; that he did not renounce in good faith his title of "Count"; and that he went to California in the year 1892 and remained there until 1904, after which he did not return to California until a few days before his alleged naturalization in San Francisco, and that he came to California for that purpose. At the time of his alleged naturalization he had not seen his alleged witnesses since 1894.

The law required the respondent to be a resident in the United States for a period of five years next preceding his admission as a citizen, and also required that the witnesses knew him to have resided in the United States continuously for five years preceding the granting of citizenship.

The petitioner also contends that the respondent did not in good faith renounce his title and allegiance to every foreign prince, potentate, or sovereign, and particularly to the Austro-Hungarian monarchy, and that the respondent repeatedly declared himself and held himself out to be a subject of Austro-Hungary.

The petitioner further claims that in a certain marriage contract, made between the respondent and a Miss Wetherbee, in Paris, he alleged that he was an Austrian count, and was married according to the Austro-Hungary laws, and that the respondent did marry the said Miss Wetherbee in Paris, on February 22, ——, and that the said respondent then alleged in the contract that he was an Austro-Hungarian subject; that in the year 1909 the respondent purchased from Commo-

dore Robert E. Todd, a citizen of the United States, the schooner yacht Thistle, afterwards renamed Tolna, and that he bought the same as an Austro-Hungarian subject, and that he registered the same under the Austro-Hungarian flag; that he traveled around the world in the said yacht, flying the Austro-Hungarian flag. The petitioner also contends that the respondent at all times held himself out as an Austro-Hungarian subject, and never claimed to be an American citizen.

I am convinced that respondent's oath in his application, to the effect that he resided in the United States for a period of five years next preceding his admission as a citizen, is false, and that the witnesses did not and could not have known him to have resided in the United States continuously for five years immediately preceding the granting of citizenship.

Upon the trial of this action the respondent admitted that from 1894 to 1906, a period of 12 years, he was continuously absent from the United States, and that upon his return from this long trip he went to San Francisco; that his witnesses were a Mr. Kirkpatrick and another, whose name he could not recall, neither of whom had he seen for a period of 12 years; that he corresponded occasionally with Kirkpatrick, but not with the other witness. His claim is that the absence from the United States was disclosed to the court which granted him citizenship. I am unable to credit this testimony. I was impressed with the lack of candor and frankness on the part of the respondent.

The respondent had not renounced his title as "Count," but continued its use long after the naturalization had been granted to him. There was received in evidence a personal card of the respondent, which was used by him long after the certificate of naturalization had been granted to him. A copy of this card is as follows:

"Le Comte Rodolphe Festetics de Tolna.
"Chateau des Eucalyptus,
"Antibes Alpes, Martimes.
"Yacht Tolna."

Translated this reads:

"The Count Rodolphe Festetics de Tolna.
"Chateau des Eucalyptus,
"Antibes Alpes, Martimes.
"Yacht Tolna."

The excuse offered by the respondent was that he used the word "Count" as his middle name. I cannot credit that statement. The use of his card was in line with his whole

27 F.(2d)—62½

conduct in failing to renounce his title and his continued use thereof.

The yacht Tolna, in which the respondent cruised, was not of American registry. His yacht was registered under the Austro-Hungarian government and flew the flag of Austro-Hungary. The respondent never exercised the privileges of the franchise, and never owned any property in this country.

It is significant that for a period of 12 years prior to the naturalization of the respondent he was abroad for 12 years, and that after procuring a certificate of naturalization his yacht flew the Austro-Hungarian flag; that he married under an Austro-Hungarian contract, and that he gave the title of "Countess" to his wife; and the first time that he asserted his citizenship was after war had been declared and his yacht was seized by a foreign power.

Citizenship is a valuable right, and one seeking it must do so in good faith, and must show a full compliance with the law. There must be an absolute renunciation of allegiance to every foreign prince, potentate, or sovereign. This the respondent did not do. There was a mental reservation on his part. At no time did he renounce his title of "Count." He did not assert his citizenship until after his yacht had been seized by a foreign power. His continued absence for a period of twelve years lends force to this contention. Citizenship must stand upon firmer ground. Citizens cannot owe a dual allegiance.

The material allegations of the complaint have been proven. Decree for petitioner. Settle decree on notice.